OPINION
{¶ 1} Defendant-appellant Jonathan Scott appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of assault. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 6, 2003, the Richland County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. At his arraignment on March 25, 2003, appellant entered a plea of not guilty to the charge contained in the indictment.
 {¶ 3} Thereafter, a bench trial commenced on September 8, 2003. The following testimony was adduced at trial.
 {¶ 4} During the early morning hours of February 15, 2003, Amir Marandi, a security guard/bouncer at Scores bar in Mansfield, Ohio, was hit in the back of the head with a beer bottle. At trial, Mark Barler, also a security guard/bouncer at Scores, testified that he witnessed the incident, which occurred right outside the front door. Barler, who picked appellant's photo out of a photo array on February 18, 2003, testified that appellant was the person who "came up from behind me and hit Amir with the bottle." Transcript at 14.
 {¶ 5} Amir Marandi, the victim herein, was the next witness to testify at trial. As part of his job as head of security, Marandi was responsible for searching individuals as they walked into the bar with a handheld metal detector. When appellant walked into the bar, Marandi asked him to put his hands to his sides and to stand still so that Marandi could scan him with the detector. Appellant, however, was acting "really hyper" and appeared to be under the influence of something. Transcript at 23. Since the other individuals appellant was with were acting normally, Marandi permitted appellant to enter the bar.
 {¶ 6} Approximately twenty minutes later, Jeremy Beidelschies, another security guard, came up to Marandi and told him that a man in a blue sweatsuit was walking around the bar bumping into people. When two security guards approached appellant, appellant said "Fuck you." Transcript at 24. Marandi, who realized that the man was the same man who had given him problems at the door, told Beidelschies to keep an eye on him. Shortly thereafter, Marandi left his position at the door and switched to being a roamer.[1] While he was walking by the dance floor, Marandi saw a man walking around with just a white tank top on, which is in violation of the dress code at Scores. Appellant apparently had taken off his blue sweat jacket, revealing a white tank top underneath. Marandi then asked appellant to put his jacket back on because of the dress code, but appellant failed to do so. When Marandi approached appellant two or three minutes later, tapped appellant on the elbow and asked him again to put his shirt on or else to leave, appellant said "Get your fucking hands off me." Transcript at 27. Appellant also told Marandi, when told that he either needed to abide by the dress code or leave, that he did not "have to do shit." Id.
 {¶ 7} According to Marandi, appellant's friend, Demetrius Keith Ranshaw, then stepped in and became verbally abusive to Marandi. As Ranshaw turned around to head back into the front room of the bar, Marandi, who had radioed for back up assistance and who had told Jeremy Beidelschies that "these guys need to go", walked up behind Ranshaw, grabbed a beer bottle out of his hand and set it on a table, and "bear hugged him, picked him up off the ground." Transcript at 28. Marandi then began walking Ranshaw towards the front door while bear hugging him. According to Marandi, Ranshaw was laughing the entire time. The following is an excerpt from Marandi's trial testimony:
 {¶ 8} ". . . Got to the front door. He [Ranshaw] tried to kick off the wall or right there by the front door. He tried to kick off the wall to knock me backwards. Didn't happen. At that point I kicked the door open, took him outside. And right by the front door, right there as soon as I set him down, I pushed him away, because I didn't want him turning around and hitting me. I pushed him away. At that point something hit me right on the right back — right side of my head." Transcript at 28-29. When asked, Marandi testified that there was no way that Ranshaw could have hit him while Marandi had Ranshaw in a bear hug with his arms at his side.
 {¶ 9} After he was hit in the head, Marandi lost consciousness and fell forward into a bike rack. When he came to shortly thereafter, the only two men who Marandi saw outside the bar other than Scores security guards, were appellant and Ranshaw. As a result of his injuries, Marandi received six or seven stitches in his chin, which left a permanent scar, and suffered injuries to his ribs, which Marandi testified caused him debilitating pain for about three weeks. In addition, Marandi's eye was swollen shut for three days, he had a deviated septum, and his teeth no longer lined up properly. Due to his injuries, Marandi missed about a week and a half of work. Marandi testified that he picked appellant's photo out of a photo array and that, other than appellant and Ranshaw, no one else was causing problems or being aggressive in the bar that night.
 {¶ 10} During questioning by the court, Marandi testified that he did not see who had hit him.
 {¶ 11} Steve Gifford, the owner of Scores, testified that he was working the night when Marandi was assaulted. Gifford testified that, although appellant was giving them problems during the scanning with the metal detector and was acting strangely, he was permitted into the bar with his friends since Gifford knew appellant's uncle. According to Gifford, appellant and a couple of security guards were following Marandi out of the door. Gifford further testified that at the time Marandi was struck on the head with the beer bottle, the only patrons outside were appellant and Ranshaw. Gifford identified appellant from a photo array as the person who was causing trouble in the bar and then walked out.
 {¶ 12} At trial, Jeremy Beidelschies testified that he was employed as head of security at Scores the night Marandi was assaulted and that he picked appellant out of a photo array. Beidelschies testified that he was positive that appellant hit Marandi with the beer bottle since "I seen him do it on the way out." Transcript at 89. On cross-examination, Beidelschies testified that appellant "grabbed a beer bottle off the end of the bar, hit Amir [Marandi] in the head. He followed right after him." Transcript at 93. Beidelschies further testified that he was seven to eight feet behind Marandi and three to four feet behind appellant while walking with them to the door.
 {¶ 13} Officer Angela Bivens of the Mansfield Police Department testified that she interviewed witnesses and took statements as part of her investigation of the assault and also prepared a photo array. According to Officer Bivens, Jeremy Beidelschies and Mark Barler positively identified appellant from the photo array as the person who had struck appellant. The Officer further testified that the two, in addition to Amir Marandi and Steve Gifford, positively and quickly identified appellant as the person who was causing trouble in the bar that night. Since appellant had left the scene on the night of the assault, Officer Bivens did not take a statement from appellant until he turned himself in a few days later. In a taped and transcribed statement to police that was read into the record, appellant stated that he saw "another fella came rushing by, hit that bouncer . . . with a bottle." Transcript at 133. Appellant further stated that he knew that he did not hit Marandi with a beer bottle since he did not drink beer the entire evening, but rather had imbibed 10 or 11 shots prior to arriving at the bar. Appellant, in his statement to police, indicated that he was intoxicated so that he "couldn't really see straight. That's how I know for a fact that. . . . I didn't hit the fella with a beer bottle, because I couldn't even defend myself." Transcript at 134-135. Appellant further stated that he did not know the name of the person who had struck Marandi in the head with the beer bottle, but that the person was nicknamed "Red". Officer Bivens testified that she attempted to confirm the truth of appellant's story and to look for "Red". Although she cross-referenced "everything I could find under the nicknames with the name Red," the Officer was unsuccessful. Transcript at 148.
 {¶ 14} Appellant next testified at trial in his own defense. During his testimony, appellant, who indicated that he was pretty intoxicated before arriving at the club, testified that, after Marandi told appellant and Ranshaw that they would have to leave the bar, he agreed to leave the bar and "go spend our money elsewhere." Transcript at 163. According to appellant, as he was in the doorway of the building, he saw "somebody shot off from the right side of me and hit Mr. Marandi with the beer bottle." Transcript at 164. The following is an excerpt from appellant's trial testimony:
 {¶ 15} "Q. And when did you meet the friends he [Ranshaw] was with on that evening?
 {¶ 16} "A. That same evening. That evening when Red, his friend Red came in, and he was the one who prompted that we should go to the club. That was the first time I had ever met that gentleman. David D. I had met, you know, a week prior. He'd been over to the house to help. He'd pick up scraps for me, and so forth, and kind of be a general laborer for me.
 {¶ 17} "Q. Can you identify for the Judge today who you believe you saw strike Mr. Marandi.
 {¶ 18} "A. I could if he was present.
 {¶ 19} "Q. Are you saying it's the Red you were referring to earlier?
 {¶ 20} "A. Yes.
 {¶ 21} "Q. You're saying you would recognize him if he were in the room.
 {¶ 22} "A. I certainly would." Transcript at 168-169. Appellant further testified that he has not seen "Red" since the night of the incident and that he heard that "Red" went up to Detroit. On cross-examination, appellant testified that he did not know Red's real name and that he did not find out the same from Ranshaw.
 {¶ 23} As memorialized in a Judgment Entry filed on September 10, 2003, the trial court found appellant guilty of assault in violation of R.C. 2903.12, a misdemeanor of the first degree, and not guilty of felonious assault. The trial court specifically found that there was no evidence of serious physical harm supporting a conviction for felonious assault. The trial court, in its September 10, 2003, entry, further stated, in relevant part, as follows: "Defendant attempted to use inconsistencies in the testimony of the various witnesses to suggest that they were not credible while he and his witness provided inconsistent testimony. Two witnesses saw defendant hit the victim with a beer bottle causing injury. All credible testimony indicates that defendant was the only person in a position to assault the victim."
 {¶ 24} Thereafter, pursuant to a Sentencing Entry filed on December 9, 2003, appellant was sentenced to sixty days in jail with thirty days credit for time served, placed on community control for one and a half years under specified terms and conditions, and ordered to pay a fine in the amount of $1,000.00.
 {¶ 25} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 26} "I. The pre-trial identification of defendant-appellant was impermissibly suggestive.
 {¶ 27} "II. The judgment of the trial court finding defendant-appellant guilty of assault in violation of ohio revised code section 2903.13 is against the manifest weight of the evidence.
 I {¶ 28} Appellant, in his first assignment of error, argues that the pre-trial identification of appellant was impermissibly suggestive since appellant was the only person at Scores on the night in question who was depicted in the photo array. We disagree.
 {¶ 29} The record indicates defense counsel did not challenge the use of the photo array by filing a pretrial motion to suppress the identification evidence as required by Crim.R. 12(B)(3). A failure to challenge, prior to trial, alleged defective photographic identification procedures precludes appellate review of this issue, absent plain error. See State v.Green (1990), 67 Ohio App.3d 72, 78, 585 N.E.2d 990.
 {¶ 30} In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. D'Ambrosio (1993), 67 Ohio St.3d 185m 616 N.E.2d 909; State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
 {¶ 31} Based on the overwhelming evidence of appellant's guilt, including the positive in-court identification of appellant by both Barler and Beidelschies as the perpetrator of the assault, we find that the outcome of the trial would not have been different but for the alleged error.
 {¶ 32} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 33} Appellant, in his second assignment of error, contends that his conviction for assault is against the manifest weight of the evidence. We disagree.
 {¶ 34} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 35} In the case sub judice, appellant was convicted of assault in violation of R.C. 2903.13, a misdemeanor of the first degree.[2] Such section states, in relevant part, as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 36} Based on the facts as set forth in detail above, we find that the trial court, as trier of fact, did not lose its way so as to create a manifest miscarriage of justice. As is stated above, both Jeremy Beidelschies and Mark Barler positively identified appellant as the one who struck appellant on the head with a beer bottle while other witnesses identified appellant as the individual causing problems in the bar on the night in question. Testimony also was adduced at trial that Marandi suffered physical harm as a result of the incident. In short, we find that the trial court's finding of guilt was not against the manifest weight of the evidence.
 {¶ 37} Appellant's second assignment of error is, therefore, overruled.
 {¶ 38} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] A roamer walks around the bar and keeps an eye on things.
[2] The trial court, in its December 9, 2003, entry, stated that appellant had been convicted of assault in violation of R.C.2903.12. Such section is captioned "Aggravated Assault." R.C.2903.13 is the section captioned "Assault."